297 Ga. 544
FINAL COPY

S15A0082, S15X0083.  BURTON et al. v. GLYNN COUNTY et al.; and vice versa.
S15A0626, S15X0627.  GLYNN COUNTY et al. v. BURTON et al.; and vice versa.

HUNSTEIN, Justice.

At the heart of these consolidated appeals and cross-appeals is the question of whether property owners are violating a zoning ordinance by operating their property as an event venue.  For the reasons set forth below, we conclude that the trial court properly found that the owners were violating the ordinance and that the court properly issued a declaratory judgment to that effect.  Accordingly, we affirm the first of the two trial court orders before us in its entirety, and we affirm the second of the two orders except in one respect, as explained below.

Thomas and Lee Burton own an oceanfront property in the East Beach area of St. Simons Island.  The property is situated within a single-family residential zoning district classified as "R-6" under the Glynn County Zoning Ordinance.  After the completion of a large, lavish home on the property in

2008, the Burtons began offering the property, known as Villa de Suenos,[1] as a short-term vacation rental. Over the next few years, Villa de Suenos became increasingly popular as a venue for weddings and other large gatherings; from 2010 through May 2013, at least 79 events were held at the property, with many exceeding 100 guests.[2] In print and online media, Villa de Suenos was described as "perfect for weddings" and touted as "St. Simon's Island's premier wedding destination"; its website featured scores of photographs of weddings held at the property. Guests who booked Villa de Suenos were furnished with a list of preferred caterers, photographers, florists, wedding planners, and other similar vendors.

In 2010, East Beach residents began raising complaints to the community homeowners' association and local law enforcement regarding noise, traffic, and parking issues arising from events held at Villa de Suenos. From that time, Glynn County police investigated more than 20 noise complaints related to the property, many resulting in the issuance of citations or warnings. In May 2012,

---

[1] "Villa de Suenos" translates in English as "House of Dreams."

[2] Lee Burton testified that one event in 2010 hosted more than 200 people, and that subsequently the Burtons limited the capacity of events at Villa de Suenos to 150 attendees.

Thomas Burton was arrested for maintaining a disorderly house.[3]  After conducting an investigation, the Glynn County Community Development Director concluded that the Burtons were making use of Villa de Suenos as a commercial event venue, in violation of the county's zoning ordinance.  The county thereupon issued the Burtons a cease and desist letter, contending that their operation of the property in this manner was not a permitted use in an R-6 district, and requesting that the Burtons immediately discontinue such use.

In response, the Burtons filed suit against Glynn County, along with each of its commissioners and its chief of police (hereinafter, collectively, "the County"), seeking declaratory and injunctive relief and writs of mandamus and prohibition to stop the County's efforts to enforce its zoning ordinance so as to prohibit the use of their property as an event venue.  In their complaint, the Burtons asserted, inter alia, that enforcing the zoning ordinance against them in this manner would violate their constitutional rights to due process and equal protection.  The County brought a counterclaim, seeking declaratory and injunctive relief consistent with its interpretation of the zoning ordinance.

---

[3] See OCGA § 16-11-44 (making it a misdemeanor to "maintain[ ] . . . a common, ill-governed, and disorderly house . . . to the common disturbance of the neighborhood or orderly citizens").

Following an evidentiary hearing,[4] the trial court issued an order on December 20, 2013, adopting the County's interpretation of its zoning ordinance and directing the Burtons to comply with the ordinance, so interpreted, in their future use of the property. The court also denied the Burtons' equal protection claim, finding that they had presented no evidence of other residential properties in Glynn County that were operated in the same manner as the Burtons' property but were treated differently by the County. The Burtons appealed, challenging the trial court's interpretation of the zoning ordinance and its rejection of their equal protection claim; the County cross-appealed, seeking to clarify the nature of the relief the trial court had granted.

Subsequently, with the appeal and cross-appeal pending, the County filed a motion for contempt in the trial court, alleging that the Burtons were continuing to promote Villa de Suenos as an event venue and accept bookings for this purpose, in violation of the trial court's order. The trial court thereafter entered a second order, on August 12, 2014, denying the motion for contempt.

[4]The hearing was at the time intended only to address the parties' cross-motions for interlocutory injunction. However, the parties subsequently agreed that this hearing would constitute the final hearing on the merits. See OCGA § 9-11-65 (a) (2) (trial court authorized to order final hearing on the merits to be "advanced and consolidated with" interlocutory hearing).

The County then appealed that ruling. The Burtons cross-appealed, arguing that the trial court's second order was erroneous to the extent it reaffirmed its earlier construction of the zoning ordinance. We consolidated the two appeals and their cross-appeals; we now affirm the December 20, 2013 order in its entirety, and we affirm in part and vacate in part the August 12, 2014 order, as explained more fully below.

*Case No. S15A0082*

1. In its December 20, 2013 order, the trial court concluded:

> The Burtons' permissible accessory use of their property to host a wedding or social event has become the primary use of their property, and the magnitude, frequency, and cumulative impact thereof has moved beyond that expected or customary for a one-family dwelling. Because this use falls outside the normal scope of residential property use, it is thus violative of Section 701 of the [Glynn County Zoning] Ordinance.

We review the construction of a zoning ordinance under a de novo standard. See Expedia, Inc. v. City of Columbus, 285 Ga. 684 (4) (681 SE2d 122) (2009) (construction of an ordinance is a question of law subject to de novo review on appeal); Ervin Co. v. Brown, 228 Ga. 14, 15 (183 SE2d 743) (1971).

In the construction of an ordinance, "the cardinal rule is to ascertain and give effect to the intention of the lawmaking body." Ervin Co., 228 Ga. at 15.

5

By its own terms, the section of the ordinance in question here is "designed to encourage the formation and continuance of a stable, healthy environment for one-family dwellings." Glynn County Zoning Ordinance, § 701.1. To promote the desired "low-to-medium density residential" development in R-6 districts, the ordinance expressly aims "to discourage any encroachment by commercial, industrial, high density residential, or other uses capable of adversely affecting the single-family residential character of the district." Id.

In furtherance of this purpose, the ordinance generally limits the use of property situated in R-6 zoning districts to "[o]ne-family dwelling[s]" and "[a]ccessory uses."[5] Id. at § 701.2. A "dwelling" is defined as "[a] building or portion of a building designed for or occupied for residential purposes" and explicitly excludes hotels, motels, and similar "accommodations used for more or less transient [guests]." Id. at § 302. A "one-family dwelling" is defined as "[a] detached dwelling . . . designed for or occupied exclusively by one family." Id. An "accessory use" is a use "which is customarily accessory and clearly incidental and subordinate to the principal use." Id.; see also id. at § 609. Thus,

_____

[5] The ordinance does also permit government-owned or operated facilities, "[n]on-commercial horticultural or agricultur[al]" uses, and certain "home occupation[s]" in R-6 districts. Glynn County Zoning Ordinance, § 701.2.

the clear intent of the ordinance is to restrict the use of properties situated in R-6 zoning districts primarily to residential use by single families and other uses that are customarily incidental thereto.

Given this intent, and considering the largely undisputed evidence presented to the trial court, we conclude, as the trial court did, that the Burtons' use of their property violated the Glynn County Zoning Ordinance. The frequency of the events and the apparently systematic manner in which the property has been marketed and utilized for large-scale gatherings support the conclusion that the property's use as an event venue has, as the trial court found, "moved beyond that expected or customary for a one-family dwelling." See Cawthon v. Douglas County, 248 Ga. 760, 765 (3) (286 SE2d 30) (1982) (affirming trial court's conclusion that homeowner's dog-grooming business had become "sufficiently voluminous and mechanized" to violate local zoning ordinance). Though the Burtons insist that they do not actively promote the use of their property as an event venue, there is ample evidence that the property has been promoted —  whether by the Burtons, their property management company, or third parties via the Internet— as just that. And while the Burtons point to their policy requiring a four-night minimum rental period as evidence

7

that Villa de Suenos is simply another garden variety St. Simon's rental property, this policy apparently does not prevent the regular use of Villa de Suenos —  an average of 25 times per year over a three-year period —  as an event venue, often for groups exceeding 100 persons.

In addition, at the evidentiary hearing, several East Beach residents testified regarding the disturbances they have experienced from loud music and raucous partygoers, which have interfered with their enjoyment of their own nearby homes.  These residents also testified regarding the traffic and parking problems generated by events held at Villa de Suenos.  See Cawthon, 248 Ga. at 761, 764 (testimony from neighbors regarding operations of homeowner's dog-grooming business, as well as traffic and other unwelcome consequences thereof, supported conclusion that homeowner's use was in violation of zoning ordinance).

In sum, the evidence amply supports the conclusion that the hosting of events at Villa de Suenos, which is undeniably permissible on an occasional basis as an incidental, accessory use of a one-family dwelling, has become "sufficiently voluminous and mechanized," Cawthon, 248 Ga. at 764, so as to fall outside the scope of permissible uses under Section 701.2 of the Glynn

8

County Zoning Ordinance. Accordingly, we affirm the trial court's determination that the Burtons have operated their property in violation of the zoning ordinance.

2. We likewise affirm the trial court's determination that the Burtons have failed to adduce evidence in support of their equal protection claim. Whether a zoning ordinance is enforced "in a reasonable and nondiscriminatory manner" is a question of fact. Gouge v. City of Snellville, 249 Ga. 91, 94 (4) (287 SE2d 539) (1982). Though the Burtons adduced testimony from one witness that events were sometimes held on rental properties on neighboring Sea Island, this witness conceded that he knew of no properties that had hosted a similar volume of events or whose events had spawned complaints from members of the surrounding community. The trial court thus properly concluded that the Burtons had failed to establish unequal treatment so as to give rise to an equal protection claim.

3. Though the trial court did not expressly rule on the Burtons' due process vagueness challenge to the zoning ordinance, it implicitly rejected this claim insofar as it enforced the ordinance and ordered the Burtons to comply with it. To satisfy due process, an ordinance must "be specific enough to give

9

fair warning of the prohibited conduct." 105 Floyd Road, Inc. v. Crisp County, 279 Ga. 345, 348 (613 SE2d 632) (2005). The Burtons assail the ordinance for its failure to quantify precisely the point at which the hosting of large functions on an R-6 property crosses the line from a permissible use "accessory" to a one-family dwelling to an impermissible primary use. However, an ordinance need not regulate with "'mathematical certainty'" to comport with due process. Id.

> [E]ven if the outermost boundaries of the applicable section of the ordinance may be imprecise in certain situations . . . , one to whose conduct [an ordinance] clearly applies may not challenge it on the basis that it may be unconstitutionally vague when applied to others.

Gouge, 249 Ga. at 93-94. We conclude that the ordinance at issue here is sufficiently specific for "'persons of common intelligence'" to recognize that the Burtons' use of Villa de Suenos does not qualify as a permissible use in an R-6 district. See 105 Floyd Road, Inc., 279 Ga. at 348; Gouge, 249 Ga. at 93. The Burtons' due process challenge thus fails.

10

4.  Of relevance to the County's motion for contempt, the December 20, 2013 order states as follows:

> The Burtons have an obligation to manage their short-term vacation rentals so as to comply with the requirements of the Ordinance governing districts such as R-6.  As such, the Burtons are hereby ORDERED to comply with Section 701 of the Ordinance by ensuring that their principal use of the property be as a "one-family dwelling," which use may include any uses customarily incidental or accessory thereto.

In response to the motion for contempt, the Burtons argued as an initial matter that the trial court lacked authority to consider the motion given the pendency of the appeal.  Specifically, the Burtons claimed that the appeal of the December 20, 2013 order operated as a supersedeas, see OCGA § 5-6-46 (a), precluding further proceedings in the case pending resolution of the appeal.  See Davis v. Harpagon Co., 281 Ga. 250 (8) (637 SE2d 1) (2006) (providing that a notice of appeal in a civil case generally acts as a supersedeas, depriving the trial court of jurisdiction to modify or enforce the judgment appealed).  The County responded that the automatic supersedeas provisions of OCGA § 5-6-46 did not apply because the trial court's December 20, 2013 order constituted an injunction.  See OCGA § 9-11-62 (a) (unless court orders otherwise, injunction

11

is not stayed pending resolution of appeal); Davis, 281 Ga. at 253 (injunctions are excepted from automatic supersedeas). On this point, the trial court agreed with the Burtons, construing its December 20, 2013 order as a declaratory judgment, not an injunction, and therefore finding that contempt was unavailable at that stage of the proceedings.

A declaratory judgment is "a means by which a superior court 'simply declares the rights of the parties or expresses (its) opinion . . . on a question of law, without ordering anything to be done.'" Baker v. City of Marietta, 271 Ga. 210, 213 (1) (518 SE2d 879) (1999); accord Richard C. Ruskell, Ga. Practice & Procedure, § 26:9 (2014-2015 ed.). An injunction, by contrast, imposes an affirmative duty on the party enjoined to either perform — or refrain from performing — a specified act. Ruskell, Ga. Practice & Procedure, § 28:1; see also Adams v. Madison County Planning & Zoning, 271 Ga. App. 333 (1) (609 SE2d 681) (2005) (order requiring property owners to remove paving equipment from their property was injunctive in nature). Thus, an order simply delineating what the applicable legal authority requires or prohibits is a declaratory judgment. Such an order is not converted into an injunction merely because it directs a party to comply with the law so construed. See Wiggins v. Bd. of

12

Commrs. of Tift County, 258 Ga. App. 666, 668 (574 SE2d 874) (2002) (holding that injunction would not lie to simply require a party to obey the law).

It is axiomatic that "[a] court has the authority to interpret and clarify [its own] order." Blair v. Blair, 272 Ga. 94, 96 (1) (527 SE2d 177) (2000). As the trial court has confirmed, its December 20, 2013 order did no more than determine that the Burtons' use of their property was in violation of the zoning ordinance and direct them henceforth to comply with the terms of the ordinance. As such, the December 20, 2013 order constituted a declaratory judgment. This being the case, the trial court lacked jurisdiction to entertain the motion for contempt during the pendency of the appeal. See Davis, 281 Ga. at 253. Rather than purporting to deny the motion, however, the trial court – once it had determined that it lacked jurisdiction – should have refrained from acting further on the motion. We therefore affirm the August 12, 2014 order to the extent it construed the December 20, 2013 order as a declaratory judgment, but we vacate the August 12, 2014 order to the extent it denied the motion for contempt rather than dismissing the motion for lack of jurisdiction or holding it in abeyance pending disposition of the appeal.

*Case No. S15X0083*

5. The County contends in its cross-appeal that the trial court erred to the extent it granted only declaratory relief against the Burtons. Having affirmed the trial court's conclusion that the Burtons' use of their property violated the zoning ordinance, and having affirmed the trial court's characterization of its initial order as declaratory and not injunctive, we now also affirm the trial court's exercise of discretion not to award an injunction. A trial court's decision to grant or deny a request for an injunction must be affirmed absent an abuse of discretion. OCGA § 9-5-8 (decision to grant an injunction "shall always rest in the sound discretion" of the trial court); Pennsylvania Poorboy, Inc. v. Robbins Restaurant, Inc., 238 Ga. 539 (233 SE2d 791) (1977). We find no abuse of discretion here.[6]

*Case No. S15X0627*

6. Because we have affirmed the trial court's conclusion that the Burtons' use of their property violated the zoning ordinance, we must necessarily reject

_____

[6] Of course, the fact that the trial court declined to award an injunction at the same time it granted declaratory relief delineating the Burtons' rights and obligations under the zoning ordinance would not preclude the trial court from considering injunctive relief in the future should the Burtons continue to operate their property in violation of the ordinance.

14

the Burtons' claim in this cross-appeal that the trial court erred in reaffirming this conclusion in its August 12, 2014 order.

Judgment affirmed in Case Nos. S15A0082 and S15X0083. Judgment affirmed in part and vacated in part in Case Nos. S15A0626 and S15X0627. All the Justices concur.

Decided July 13, 2015.

Zoning. Glynn Superior Court. Before Judge Kelley.

Roberts Tate, James L. Roberts IV, Jason M. Tate, Lacey L. Houghton, for Burton et al.

Aaron W. Mumford; Brown Readdick Bumgartner Carter Strickland & Watkins, Gregory T. Carter, Bradley J. Watkins, Emily R. Hancock, for Glynn County et al.

Mary H. Moses, amicus curiae.